UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARVIN FAULKNER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 15 C 3344 |
| v. | ) |
| | ) Chief Judge Rubén Castillo |
| MICHAEL FRANCIS OTTO, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Marvin Faulkner, Winifred Ihejirika, and Samuel Ununna ("Plaintiffs") bring this action alleging a racketeering conspiracy under 18 U.S.C. § 1962(c) ("RICO"), fraud, intentional infliction of emotional distress, and various other claims against Michael Francis Otto ("Judge Otto"), a judge in the Circuit Court of Cook County, Illinois, and other defendants. (R. 10, Am. Compl.) Presently before the Court is Judge Otto's motion to dismiss. (R. 23, Mot.) For the reasons stated below, the motion is granted.

## BACKGROUND

In April 2015, Plaintiffs filed this *pro se* action against Judge Otto and a host of other defendants alleging a vast "scheme to defraud in mortgage foreclosures in the State of Illinois." (R. 1, Compl. at 2.) As a result of this alleged scheme, Plaintiffs claim to have lost several properties that they owned in Cook County. (*Id.* at 4-5.) On May 6, 2015, an attorney from the Illinois Attorney General's Office filed an appearance on Judge Otto's behalf. (R. 6, Appearance.) The Court set the case for a status hearing on June 4, 2015. (R. 7, Min. Entry.) At that hearing, counsel for Judge Otto appeared and asserted that she intended to raise absolute judicial immunity and other defenses. (R. 9, Tr. of Proceedings at 3.) At that point, Plaintiffs

requested time to amend their complaint, which the Court granted. (*Id.* at 4; R. 8, Min. Entry.) The Court dismissed the original complaint without prejudice. (R. 8, Min. Entry.) The Court further ordered Plaintiffs to file an amended complaint within 60 days and to properly serve all defendants named therein. (*Id.*)

On August 3, 2015, Plaintiffs filed a 44-page amended complaint naming Judge Otto and many other defendants, including the banks and attorneys involved in the foreclosure proceedings, and the individuals who purchased their properties through sheriff's sales conducted pursuant to orders entered in the state cases.[1] (R. 10, Am. Compl. at 1.) Plaintiffs again allege a vast conspiracy aimed at depriving them of the properties that were foreclosed upon in state court. (*Id.* at 2-44.)

As to Judge Otto, Plaintiffs allege that he "illicitly violated plaintiffs' Constitutional Rights, State Rights and Local Laws and Ordinances . . . by fraudulently acting to defraud the 'Properties of Umunna, Faulkner and Iherjirka' to unjustly enrich himself and others in defrauding 'the plaintiffs' in mortgage foreclosures." (*Id.* at 4.) They allege that Judge Otto should have recused himself from their cases because he was affiliated with a law firm that did work for Urban Partnership Bank, one of the plaintiffs in the foreclosure cases. (*Id.* at 23.) They claim that Judge Otto "knowingly disregarded the law" in his rulings and failed to "protect the public from injustice" as he was required to do. (*Id.*) They further allege that Judge Otto used "intimidation tactics" in the foreclosure cases by calling their cases last, and "clearing the court room of visitors and neutral litigants with Cook County Sheriffs always standing within two feet

---

[1] In addition to Judge Otto, Plaintiffs also named as defendants: William Farrow, Urban Partnership Bank, Shorebank, Jenner & Block LLP, Chuhak & Tecson, P.C., Michael A. Eurich, Willa Capital Properties, Anna M. Loftus, Darryl B. Simko, Alfred M. Swanson, Jr., Pierce & Associates, Edward J. Lesniak, Alexander D. Marks, Burke, Warren MacKay & Serritella, P.C., Raymond W. Mitchell, Irwin J. Solganick, Alexander P. White, Timothy L. Rowell, Neighborhood Housing Services, John Avgerinos, Samantha L. Babcock, Steven E. Anderson, Erik Hubbard, the Federal Deposit Insurance Corporation, and Meredith Freeman. (R. 10, Am. Compl. at 4-10.) All but the last two defendants have since been voluntarily dismissed. (R. 57, Mot. for Voluntary Dismissal; R. 61, Order.)

2

of nonviolent Faulkner, during court's proceedings." (*Id.*) Plaintiffs complain that Judge Otto laughed when on one occasion Faulkner complained that a Cook County Sheriff's deputy was "brea[th]ing on the back of his neck." (*Id.*) They claim that others involved in the alleged conspiracy benefitted from the "illicit verdicts" entered by Judge Otto, including Urban Partnership Bank and the individuals who purchased their properties at the sheriff's sales conducted pursuant to Judge Otto's orders. (*Id.* at 28.)

Based on these factual allegations, Plaintiffs allege 11 separate counts against Judge Otto and all other defendants, which they label as follows: "RICO," "Conspiracy to Violate RICO," "Fraud," "Unjust Enrichment," "Hate Crime," "Intentional Infliction of Emotional Distress," "Intentional Tort," "Wrongful Detainment," "Intimidation," and "Civil Conspiracy." (*Id.* at 40-41.) In their request for relief, Plaintiffs ask this Court to "award in favor of the plaintiffs . . . and rule against each defendant(s) for fraud and damages on the target properties." (*Id.* at 10-11.) Specifically, they seek "disgorgement of ill-gotten gains" from the foreclosure judgments, (*id.* at 40)—the value of the roughly 15 properties at issue—which they estimate to be around $3.8 million dollars, (*Id.* at 11.) They also seek $11 million in "treble damages" and $40 million in "punitive damages." (*Id.*) Judge Otto now moves to dismiss. (R. 23, Mot.)

## LEGAL STANDARD

A Rule 12(b)(6) motion "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). In deciding a Rule 12(b)(6) motion, the Court construes the complaint in the light most favorable to the non-movant, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in the non-movant's favor. *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014). The Court can consider "allegations set

forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). To survive dismissal, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Rule 12(b)(1) provides for dismissal of a case when the Court lacks subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). In deciding a motion under Rule 12(b)(1), the Court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The Court may also look beyond the pleadings to "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation omitted). The Court must bear in mind that because Plaintiffs are proceeding *pro se*, their filings are entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, even *pro se* litigants must comply with procedural rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## ANALYSIS

Before turning to the merits, the Court must address Plaintiffs' threshold argument that Judge Otto's motion should be denied outright because it is untimely. (R. 60, Resp. at 6-9.) In Plaintiffs' view, Judge Otto "is in default." (*Id.* at 8.) Plaintiffs have been raising this argument

4

for several months in a variety of formats, and the Court has rejected the argument each time. (*See, e.g.*, R. 33, Tr. of Proceedings at 4-10; R. 38, Mot. to Vacate; R. 51, Tr. of Proceedings at 4-11; R. 55, Mot. to Strike; R. 61, Order.) The Court once again declines to hold Judge Otto in default.

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Plaintiffs' default argument appears to be based primarily on their mistaken belief that this Court ordered Judge Otto to answer or otherwise plead within 14 days after the amended complaint was filed. (R. 60, Resp. at 7; *see also* R. 33, Tr. of Proceedings at 7.) This is an incorrect statement of the record. The Court ordered Plaintiffs to file and serve their amended complaint on all defendants, without setting a specific deadline for Judge Otto or any of the other defendants to respond. (R. 8, Min. Entry; R. 9, Tr. of Proceedings at 1-4.) A duty to respond would not have been triggered under Rule 12 until Judge Otto was served, and nothing in the record demonstrates that Plaintiffs fulfilled their obligation to serve the defendants with the amended complaint as this Court ordered. Although Plaintiffs have claimed that Judge Otto formally waived service, (R. 33, Tr. of Proceedings at 5), there is no waiver of service on the docket.[2] Even though Plaintiffs are proceeding *pro se*, they are not entitled to a general dispensation from the Federal Rules. *See McNeil*, 508 U.S. at 113; *see also McMasters v. United*

---

[2] In fact, in a filing in late November 2015—six days after they moved for default judgment against Judge Otto—Plaintiffs sought additional time to effect service, asserting that they were "having trouble to serve all the defendants herein," and stating that as of that date, no one had returned their waiver of service forms. (*See* R. 28, Mot. for Enlargement of Time at 2-3.) During a status hearing held on December 15, 2015, another attorney from the Illinois Attorney General's Office stated that to his knowledge none of the defendants had been served with the amended complaint, but that counsel had "decided for the sake of expediency to go ahead and file the motion on behalf of Judge Otto." (R. 33, Tr. of Proceedings at 4-5.) It is also worth noting that the certificate of service attached to Plaintiffs' amended complaint states that "all counsel of record" was served, but it only lists three attorneys and not the Illinois Attorney General's Office. (*See* R. 10, Am. Compl. at 44.)

*States*, 260 F.3d 814, 818 (7th Cir. 2001) (*pro se* plaintiff was not excused from the requirements of service on the defendants).

In addition, "[t]his Circuit has a well established policy favoring a trial on the merits over a default judgment." *Sun v. Bd. of Trustees of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007). Default judgment should be entered "only in extreme situations, or when other less drastic sanctions have proven unavailing." *Id.* In other words, "it is a weapon of last resort, appropriate only when a party wilfully disregards pending litigation." *Id.*; *see also Sims v. EGA Products, Inc.*, 475 F.3d 865, 868 (7th Cir. 2007) ("A default judgment is a sanction for misconduct during the litigation."). Judge Otto's conduct cannot conceivably be characterized as a willful disregard of this lawsuit. As recounted above, an attorney filed an appearance on his behalf shortly after the original complaint was filed, and also appeared at a status hearing. (R. 9, Tr. of Proceedings.) Judge Otto was under no obligation to respond to the original complaint because the Court dismissed it without prejudice after Plaintiffs sought leave to file an amended pleading. (R. 8, Min. Entry.) Plaintiffs have not demonstrated that they complied with this Court's order to serve Judge Otto with the amended complaint. (*See id.*) Nevertheless, Judge Otto has now filed a motion to dismiss raising non-frivolous challenges to the validity of the complaint.[3] (R. 23, Mot.)

To the extent there was any delay, Plaintiffs have not identified any prejudice that they have suffered as a result, nor can the Court discern any. *See JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 793 (7th Cir. 2015) ("A multimillion dollar judgment on a specious legal theory is too heavy a sanction for a [defendant's] two-week gap in representation," particularly where permitting the defendant to litigate the plaintiff's claims on the merits "would not have caused

---

[3] Plaintiffs make much of the fact that the certificate of service attached to Judge Otto's motion states that it was filed on November 23, 2015. (R. 60, Resp. at 7-8.) This does appear to be an error, because the docket reflects that Judge Otto's motion was filed via the Court's electronic filing system on November 25, 2015. (R. 23, Mot.) Regardless, there is no dispute that Judge Otto's motion was on file before Plaintiffs' motion for default judgment was heard by the Court. (*See* R. 33, Tr. of Proceedings at 5-6.)

6

prejudice to the opposing party or the court's docket."); *Sims*, 475 F.3d at 868 (observing that a default judgment was too harsh of a sanction "for a wrong that apparently caused no prejudice to the adverse party"). Under these circumstances, Plaintiffs' request for default is denied. For the same reasons, the Court denies Plaintiffs' separate motion to vacate, (R. 64), which asks the Court to reverse its denial of a prior motion for default. With this resolved, the Court turns to the merits of Judge Otto's arguments.

I. **The *Rooker-Feldman* Doctrine**

Judge Otto first argues that Plaintiffs' allegations challenging the state foreclosure actions are barred by the *Rooker-Feldman* doctrine. (R. 23, Mot. at 5.) Under the *Rooker-Feldman* doctrine,[4] "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994); *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006) (*Rooker-Feldman* bars "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (citation omitted)). Federal courts lack jurisdiction over such claims because "the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014).

It is apparent from the face of the complaint that Plaintiffs' allegations against Judge Otto pertain to injuries arising from the state foreclosure proceedings, as Plaintiffs assert that he and

---

[4] *See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Court notes that a motion raising a *Rooker-Feldman* argument is considered an attack on the Court's subject-matter jurisdiction, and thus Rule 12(b)(1) is the applicable rule. *See Frederiksen v. City of Lockport*, 384 F.3d 437, 439 (7th Cir. 2004).

7

others "defraud[ed]" them in the foreclosure proceedings; they attack his "illicit orders" and his general management of their cases. (R. 10, Am. Compl. at 4, 23, 28.) It is also apparent that Plaintiffs are seeking relief that would effectively nullify the state-court judgments: they seek the return of their properties, as well as the "disgorgement of ill-gotten gains" awarded to the banks in the foreclosure cases. (*See* R. 10, Am. Compl. at 40.) Such relief is barred by *Rooker-Feldman*. See *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 533-34 (7th Cir. 2004) (claim seeking the recovery of plaintiff's foreclosed home plus interest and punitive damages was "tantamount to a request to vacate the state court's judgment of foreclosure" and was thus barred by *Rooker-Feldman*); *see also Dawaji v. Askar*, 618 F. App'x 858, 860 (7th Cir. 2015) ("*Rooker-Feldman* applies for the additional reason that despite [the plaintiff's] assertions to the contrary, the relief she seeks would require that we nullify the state-court judgment. [The plaintiff's] request for damages is the amount that she would have received had she not been coerced into accepting the settlement. She thus wants the federal court in effect to negate the state-court order approving the agreed-upon child support, maintenance, and property settlement."); *Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 826 (7th Cir. 1999) (*Rooker-Feldman* applied where the plaintiff requested the monetary value of a revoked liquor license, which would "effectively reverse the state court judgment upholding the revocation of the liquor license").

Plaintiffs nevertheless argue that their case is not barred by *Rooker-Feldman* because they are claiming that Judge Otto (and the other defendants) committed fraud in connection with the state foreclosure actions. (R. 60, Resp. at 5, 12.) However, Plaintiffs cannot circumvent the *Rooker-Feldman* bar simply by claiming fraud. Instead, the key determinant is the source of Plaintiffs' injury: "[I]f a federal plaintiff alleges that a fraud produced an adverse state-court decision, then the judicial decision is the source of injury for *Rooker-Feldman* purposes."

*Dawaji*, 618 F. App'x at 859; *see also Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015) ("[F]raud (no matter how described) does not permit a federal district court to set aside a state court's judgment in a civil suit[.]"). That is precisely what Plaintiffs are claiming here. Despite their efforts to recast their claims, the amended complaint repeatedly attacks Judge Otto's "illicit orders" and alleges injuries arising from the foreclosure proceedings. Such claims are barred by *Rooker-Feldman*.

Plaintiffs also argue that *Rooker-Feldman* does not apply because Judge Otto has not "provided nor submitted proof that he . . . was a 'party' in the state-court foreclosure case." (R. 60, Resp. at 3 (emphasis omitted).) They cite to the Supreme Court's decision in *Johnson* in support, but they appear to have misunderstood the holding of that case. (*See* R. 60, Resp. at 5 (citing *Johnson*, 512 U.S. at 1006).) In *Johnson*, the defendants argued that *Rooker-Feldman* barred one of the plaintiffs, the United States, from raising a claim that would negate a prior state court ruling that was favorable to the defendants. *Johnson*, 512 U.S. at 1005-06. The Supreme Court held that *Rooker-Feldman* was "inapt" because "the United States was not a party in the state court." *Id.* at 1006. In other words, *Rooker-Feldman* only serves to bar a "party losing in state court" from "seeking what in substance would be appellate review of the state judgment in a United States district court." *Id.* In contrast to *Johnson*, there is no question here that Plaintiffs were the losing parties in the underlying state foreclosure cases. (*See* R. 10, Am. Compl. at 4, 11, 23-28.) Accordingly, their reliance on *Johnson* is unavailing.

Plaintiffs also cite to the Seventh Circuit's opinion in *Patel* for the principle that "*Rooker-Feldman* does not apply when a litigant files suit in federal district court, seeking recompense for 'extrajudicial' injury caused by his loss in state court." (R. 60, Resp. at 13 (emphasis omitted) (citing *Patel*, 780 F.3d at 730).) They are correct as a general matter, but *Patel* does not support a

9

rejection of the doctrine here. *Patel* involved a gas station owner who alleged a RICO claim pertaining to the loss of his property in a state foreclosure proceeding. *Id.* at 729. The plaintiff sued a private company and another individual with whom he had been doing business, alleging that they "acted in cahoots to defraud him out of his business." *Id.* The Seventh Circuit reaffirmed the well-settled principle that the plaintiff could not seek any relief that would effectively "set aside the state court's judgment." *Id.* at 730. However, the court also explored the limits of the doctrine, observing that if a plaintiff is complaining of "out-of-court events" that "predate[] the state litigation and caused injury independently" of that judgment, "then a district court has jurisdiction—but only to the extent of dealing with that injury." *Id.* In other words, because the plaintiff alleged that "that the defendants conducted a racketeering enterprise that predates the state court's judgments" and "caused injury independently" of those judgments, this aspect of his claim was not barred by *Rooker-Feldman*. *Id.* In contrast to *Patel*, Plaintiffs are not suing private individuals over "out-of-court events" that predate the state foreclosure cases. The RICO conspiracy they describe *is* the state litigation itself; they claim that the banks, the judge, the attorneys, the end purchasers, and others all conspired to deprive them of their properties in the foreclosure proceedings in order to enrich themselves. Such allegations clearly fall within the parameters of *Rooker-Feldman*.

Plaintiffs also suggest that their case is not subject to *Rooker-Feldman* because Judge Otto acted improperly and violated their constitutional rights in the state cases. (R. 60, Resp. at 9-11.) However, the *Rooker-Feldman* bar applies even if a state court's order was "erroneous" or, for that matter, "unconstitutional." *Long*, 182 F.3d at 555 (citation omitted). Plaintiffs could have appealed in state court if they felt that Judge Otto mishandled their cases, but they cannot pursue this federal action seeking to invalidate his orders. Accordingly, all allegations contained

in the amended complaint attacking the state court proceedings and seeking to invalidate the state court orders must be dismissed for lack of subject-matter jurisdiction.

## II.   Judicial Immunity

Assuming that there are any allegations in the complaint against Judge Otto that survive the *Rooker-Feldman* bar, Judge Otto also argues that he is entitled to absolute judicial immunity. (R. 23, Mot. at 6.) It has long been held that judges are "not liable to civil actions for their judicial acts." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (citation omitted). Thus, a judge is entitled to absolute immunity for actions taken in his judicial capacity, and he "will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356-57 (citation omitted). "Jurisdiction" is construed quite broadly in this context, and the standard will be met only in unusual cases where, for example, a judge authorized to hear only probate cases conducts a criminal trial. *Id.* & n.7. Plaintiffs have provided nothing here to suggest that a duly appointed chancery court judge was not authorized to hear foreclosure cases. They argue that Judge Otto's rulings were unfair and that he erred in failing to recuse himself, but even if these allegations are true, Judge Otto is entitled to absolute judicial immunity. If a state judge errs, "a party's remedy is through appellate process," not through a federal lawsuit against the judge. *Dawson v. Newman*, 419 F.3d 656, 660-61 (7th Cir. 2005) (citation omitted). For these reasons, Judge Otto will be dismissed as a defendant.[5]

## III.   Remaining Defendants

In light of this ruling, as well as Plaintiffs' decision to voluntarily dismiss a number of the defendants, what remains of this case at this point is Plaintiffs' claims against two

---

[5] Because the claims against Judge Otto are barred by *Rooker-Feldman* and absolute judicial immunity, the Court does not reach Judge Otto's alternative argument that Plaintiffs' allegations against him do not adequately state a claim for relief under federal pleading standards. (*See* R. 23, Mot. at 8.)

defendants: the Federal Deposit Insurance Corporation ("the FDIC") and Meredith Freeman, an attorney who represented the banks in one or more of the state foreclosure cases. (*See* R. 10, Am. Compl. at 16, 36.) These defendants have not yet answered or otherwise responded to the amended complaint.[6] However, because *Rooker-Feldman* pertains to the Court's subject-matter jurisdiction, the Court can and should raise the matter *sua sponte* on behalf of these defendants. *See Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 646 (7th Cir. 2011) ("The district court correctly considered the *Rooker-Feldman* doctrine *sua sponte*[.]"); *Garry v. Geils*, 82 F.3d 1362, 1364 (7th Cir. 1996) ("Since the *Rooker-Feldman* doctrine is about whether inferior federal courts have the *authority* (i.e., subject matter jurisdiction) to hear a given case, it can be raised at any time, by either party, or *sua sponte* by the court."); *Amari Co. v. Burgess*, 955 F. Supp. 2d 868, 878 (N.D. Ill. 2013) ("Because it impacts subject-matter jurisdiction, this court is obligated to consider *sua sponte* whether the Rooker-Feldman doctrine might apply.").

As outlined above, the bulk of the allegations in the complaint pertain to improprieties in the state foreclosure proceedings, and the relief sought is geared toward undoing the orders entered in those proceedings and recovering the monetary judgments that were awarded. The Court has no jurisdiction over such claims. *See Patel*, 780 F.3d at 730; *Dawaji*, 618 F. App'x at 860. Specific to Freeman, Plaintiffs allege that she violated their rights by "acting to defraud the plaintiffs" and "unjustly enrich [her]self" in "representing to the Court illicit mortgage foreclosures targeting Iherjirika and Faulkner." (R. 10, Am. Compl. at 7.) They further allege that, "at the direction of the Chancery Judge," Freeman "would move the case towards victory of foreclosure on the property." (*Id.* at 36.) These allegations clearly pertain to injuries arising from

---

[6] It does not appear from the docket that the FDIC has been served. Freeman has entered an appearance and is represented by counsel. (R. 45, Appearance.) The Court previously ordered that she did not have to respond to the amended complaint until after the Court ruled on Judge Otto's motion to dismiss. (R. 52, Mot. to Stay; R. 54, Order.)

the state foreclosure proceedings and the judgments that were entered in those cases. The Court lacks subject-matter jurisdiction over such allegations. *Johnson*, 512 U.S. at 1005-06; *Patel*, 780 F.3d at 730.

The FDIC presents a more difficult question, however, because in addition to the allegations pertaining to the state foreclosure proceedings that are precluded by *Rooker-Feldman*, Plaintiffs also describe certain out-of-court events involving the FDIC's takeover of Shorebank, the predecessor of Urban Partnership Bank. (R. 10, Am. Compl. at 18-19.) The complaint is somewhat difficult to follow, but it appears possible that Plaintiffs could allege a claim against the FDIC that survives the *Rooker-Feldman* bar. However, because the complaint contains so many allegations that are barred by *Rooker-Feldman* and there is no ready means of separating them from those that might state a viable claim, the Court concludes that the best course of action is to dismiss the complaint in its entirety, but provide Plaintiffs an opportunity to attempt to replead an adequate claim solely against the FDIC. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (holding that a court should generally afford a party "one opportunity" to replead their claim, "even if the court is skeptical about the prospects for success").

In drafting their second amended complaint, Plaintiffs must omit allegations attacking the state foreclosure proceedings, as well as any request for relief that would negate the state-court judgments, either directly or indirectly. Plaintiffs must serve the FDIC with the second amended complaint in accordance with Federal Rule of Civil Procedure 4. The Court offers no opinion about whether Plaintiffs can adequately state a claim against the FDIC, which does not pertain to the Court's subject-matter jurisdiction.

### IV. Voluntary Dismissal

Finally, as noted above, Plaintiffs voluntarily dismissed numerous defendants last month. (R. 57, Mot. to Voluntarily Dismiss; R. 61, Order.) However, they have since filed a motion to vacate the Court's order granting their motion for voluntary dismissal. (R. 66, Mot. to Vacate.) Plaintiffs do not disagree with the dismissal itself, but they argue that the Court erred in making the dismissal *with* prejudice and seek modification of the order to reflect that the dismissal is *without* prejudice. (R. 66, Mot. to Vacate at 4-5; *see also* R. 61, Order.) In Plaintiffs' view, they had an absolute right to dismiss these claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1). (*Id.* at 5.)

The Court notes that Plaintiffs did not appear on March 7, 2016, to raise this objection when their motion was heard.[7] (*See* R. 61, Order.) They are correct as a general matter that Rule 41(a) gives them the right to voluntarily dismiss their claims before a defendant answers or moves for summary judgment. FED. R. CIV. P. 41(a)(1)(A). However, the Rule also provides that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." FED. R. CIV. P. 41(a)(1)(B). Plaintiffs do not address this element, which is troubling to the Court given Plaintiffs' repeated references to other lawsuits that they have filed against the defendants.[8] (*See,*

---

[7] Plaintiffs complain that the Court heard the motion on a different date then they specified in their notice. (R. 66, Mot. to Vacate at 3.) Plaintiffs originally noticed their motion for March 8, 2016, but the Court was not sitting on that date. On March 1, 2016, the Court entered an order striking the March 8 date and setting the motion for hearing on March 7, 2016. (R. 59, Min. Entry.) Plaintiffs are registered users of the Court's CM/ECF system and thus received electronic notice of the Court's order on the day it was entered; internal court records confirm that electronic notice was sent to Plaintiffs at the email addresses they provided the clerk when they obtained their accounts. Plaintiffs do not state that they did not receive the emails, but instead state that they could not attend on March 7 because they were in an "all day meeting." (R. 66, Mot. to Vacate at 3.) If Plaintiffs were unable to appear on March 7, it was their obligation to notify court staff. The Court is under no obligation to hear Plaintiffs' motions on the date they have unilaterally selected.

[8] Plaintiffs have at least one other case pending in this District against many of the same defendants. *See Faulkner v. Loftus, et al.*, No. 16 C 2432 (N.D. Ill.). Court records also reflect that Plaintiffs Faulkner and Umunna sought to intervene in an earlier case involving the FDIC and Shorebank. *See FDIC v. Amy, et al.*, No. 13 C 5888 (N.D. Ill.), R. 15 & R. 16.

*e.g.*, R. 10, Am. Compl. at 2 (describing Plaintiffs' "aggressive filing of complaints and law suits against banks, judges, law firms, attorneys and individuals who illegally wrong [them] in any way"); *id.* at 3 ("The Plaintiffs filed complaints and law suits against defendant(s); as a result, has received backlash by defendant(s).").)

Accordingly, Plaintiffs' motion to vacate will be denied without prejudice. Plaintiffs may renew their request in a motion that fully addresses the requirements of Rule 41(a)(1)(A)-(B), and certifies in writing that they have not voluntarily dismissed a lawsuit, in either state or federal court, based on or including the same claims raised in the present complaint against any of the defendants named in the notice of voluntary dismissal.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motions to vacate (R. 64, 66) are DENIED. The motion hearing scheduled on April 21, 2016, is VACATED. Michael Francis Otto's motion to dismiss (R. 23) is GRANTED, and he is DISMISSED as a defendant. The amended complaint (R. 10) is DISMISSED as stated herein. Plaintiffs are GRANTED to and including May 16, 2016, to file a second amended complaint that complies with the terms of this order. Their failure to file an amended pleading by the deadline will result in the dismissal of their case with prejudice.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: April 5, 2016**